UNITED STATES & MEXICAN TRUST COMPANY v. P. M. YOUNG, COMMISSIONER.

Decided April 13, 1907.

**1.—Receivership—Duty of Court—Protection of All Interests.**

Property in possession of a receiver is in possession of the court appointing the receiver, and it is the duty of the court to administer the property for the best interest of all concerned, according to the rules of law and equity, and an Appellate Court will not interfere with the court's action in administering the property unless an abuse of discretion is shown.

**2.—Same—Mandamus.**

Where a creditor had recovered a judgment foreclosing a mortgage lien on property in the hands of a receiver and an order for the sale of said property for the satisfaction of his debt the court having jurisdiction of the receivership proceedings has authority to order the sale of said property postponed indefinitely when the interests of other creditors demand such action, and mandamus will not lie to compel the receiver to sell said property under the judgment of foreclosure.

**3.—Receivership Proceedings—Continued Control.**

The rule that courts lose jurisdiction of a case disposed of when the term of court ends has no application to receivership cases pending the receivership.

Appeal from the District Court of Harrison County. Tried below before Hon. Richard B. Levy.

*Cook & Gossett, T. S. Miller* and *A. H. McKnight,* for appellant.— The order of the District Court, made on August 6, 1906, indefinitely postponing the sale directed in the decree of foreclosure entered on September 22, 1904, was and is void, being the equivalent of an unauthorized and arbitrary stay of execution, especially when the judgment of foreclosure has been affirmed by an Appellate Court. Articles 1024, 1028, 1339, 1404, and 1420, Sayles' Texas Civ. Stat., 1897; Laclede Bank v. Betterton, 5 Texas Civ. App., 355; Petrucio v. Seardon, 76 Texas, 639; Smith v. Miller, 66 Texas, 74; Pierson v. Hammond, 22 Texas, 585; Burck v. Burrough, 64 Texas, 445; Western Supply & Mfg. Co. v. United States & Mex. Tr. Co., 92 S. W. Rep., 986; Jones v. McMahan, 30 Texas, 720; Maulding v. Coffin, 6 Texas Civ. App., 416.

*P. M. Young,* for appellee.—Property in the hands of a receiver is in *custodia legis* and the court has jurisdiction and control of the same until the receivership is closed, and may, in its discretion, operate the same for benefit of creditors other than bondholders. Sayles Civ. Stats., 1897, articles 1470, 1491, 1493, 1490; Kreisle v. Campbell, 89 Texas, 106; Edwards v. Norton, 55 Texas, 410; Pace v. Smith, 57 Texas, 558; Russell v. Texas & Pac. Ry. Co., 68 Texas, 646; Hammond v. Tarver, 89 Texas, 291.

A writ of mandamus will not issue against a public officer to enforce the performance of an act which is within the discretion of the officer. McIlhenny v. Binz, 80 Texas, 9; Texas & Pac. Ry. Co. v. Johnson, 76 Texas, 432; Land Com. v. Bell, Dal., 366; Walker v. Barnard, 8 Texas Civ. App., 16.

RAINEY, CHIEF JUSTICE.—The appellant, on July 11, 1904, brought suit against the Southern Railway Company in the District Court of Harrison County, to establish the validity of certain bonds issued by said railway company, and to foreclose a mortgage given by said railway company to secure the payment of same. A receiver was prayed for, and P. M. Young, appellee, was appointed, and on September 22, 1904, a judgment was rendered establishing the validity of said bonds and foreclosing said mortgages. An appeal was taken from this judgment, and on January 27, 1906, said judgment was affirmed (92 S. W. Rep., 986), and on March 8, 1906, a writ of

error was denied by the Supreme Court. After the institution of the suit and the appointment of a receiver numerous creditors intervened in the District Court whose claims were duly classified. On July 31, 1906, intervenors made a motion to postpone the sale of said property, theretofore ordered made, which motion was granted and judgment entered postponing said sale until further "order of the court in term time or the judge thereof in vacation." This action of the court was excepted to and notice of appeal given. Appellant is now before this court on an appeal from a judgment denying a writ of mandamus to compel the receiver to enforce the order of sale of said property under said foreclosure judgment.

On the application to postpone the sale the trial court filed its conclusions of facts and, as there is no conflict in the evidence and said conclusions being correct, the same are adopted by this court.

"*Conclusions of Facts.*—On July 11, 1904, the plaintiff, as trustee, commenced this action to foreclose a mortgage deed of trust given by defendant railway company to plaintiff as trustee to secure bonds of the defendant and praying for appointment of a receiver; on the same day by an order in vacation S. P. Jones was appointed receiver of the mortgaged property, being the Texas Southern Railroad running from Marshall to Winnsboro, Texas, and appurtenances including rolling stock and income. Creditors and claimants intervened during progress of the cause, the number of such interventions being approximately 450; on September 22, 1904, a final decree and judgment was rendered and entered for the foreclosure of the mortgage, classifying certain demands and claims, establishing and fixing a scheme of classification of demands dividing the same into five classes, being Class 'A' claims, which included those arising against the receiver and liabilities incurred in his operation of the property; Class 'B' which included labor operator's demands maturing within one year for which liens existed superior in rank of lien to the bond mortgages upon the mortgaged property; Class 'C,' which included statutory lien demands for which liens existed next superior to the bond mortgages; Class 'D,' the bonds secured by the lien of the mortgage; Class 'E,' which included the demands of general unsecured creditors, this decree and judgment adjudicated numerous and various demands into Class 'B,' as above, aggregating approximately $81,500; and into Class 'C' $25,700; and adjudicated and allowed in Class 'D' bonds secured by the mortgages sued on, in the principal sum of $807,000, being 807 bonds of $1,000 each, bearing interest at rate of five percent per annum, payable semi-annually; and into Class 'E' demands approximately $38,500.

"It was further adjudged thereby that the mortgaged property should be, by P. M. Young, therein appointed special commissioner therefor, and in case of his inability then the receiver, on the first Tuesday in December, 1904, sold upon thirty days' notice under the usual provisions relating to execution sales with additional provisions as to terms of the same appropriate to the case, among

others that no sale should be made for less than an upset price of $500,000, and the decree further directed and provided that if for any reason sale should not be made at such specified time that then the commissioner or, in case of his inability, the receiver should make such sale with reasonable speed at some legal sale day thereafter and report to the court for its action his proceedings relative to such sale; the decree further provided that various interventions and matters undisposed should be carried over for future adjudication, the right and jurisdiction of the cause to make such further adjudication being reserved. The commissioner failed to make such sale on the first Tuesday in December, 1904, for lack of bidders, and so reported his action to the February, 1905, term of court. At such February, 1905, term, on February 6, 1905, a renewal order of sale was made reducing the upset price to $300,000, and directing the sale to be made on the first Tuesday in August, 1905. This sale after being advertised by the commissioner was ordered not to be made by a vacation order entered over and against plaintiff's protest on July 29, 1905, because of the pendency untried of an action known as the Harle Case (which was pending prior to the commencement of this action) involving title to a part of the railroad, arising on an alleged defect in title existing prior to the mortgage to plaintiff. At the same February term, 1905, the receiver was ordered to borrow money and issue receiver certificates in the sum of $150,000, bearing six percent interest, payable semi-annually, which was done, and of this approximately $120,000 has been applied to the payment of the Class B and C demands and $30,000 to improvements and repair of the railroad. The receiver has also issued, under order of the court, other evidences of indebtedness in the approximate sum of $5,000, bearing like interest to make new improvements and repairs and purchase of rolling stock; on this $200,000 (approximate) of receivers' evidences of indebtedness interest is unpaid on $175,000 of it approximately since July 1, 1905, or prior. At the February term, 1905, a supplemental decree or judgment was entered on March 21, 1905, adjudicating and classifying other demands and assigning them as entitled to "B," "C," and "E" classes respectively; at the August term, 1905, on September 21, 1905, another supplemental decree was entered adjudicating and classifying other demands and assigning them as entitled to "B," "C," or "E" classes respectively, and a renewal order of sale was entered directing that the sale of the mortgaged property be made on the first Tuesday in January, 1906; this sale was not advertised to be made by reason of direction in vacation given to the commissioner in November, 1905; no formal order postponing this sale was made. At this August term, 1905, a special term of court was called for December, 1905, and at such special term, on December 5, 1905, another supplemental decree or judgment was entered classifying and adjudicating other demands including an order to the commissioner to make sale of the mortgaged property under the original decree on the first Tuesday in March, 1906, and on March 6, 1906, an order was entered raising the upset price to $350,000 and ordering that the receiver from and after March 15, 1906, should pay over to P. M. Young monthly 20 percent of the gross earnings of the road, to be

held by the court to await its orders, and that the receiver should confine his expenses of operation maintenance to the remainder of his earnings, and that the sale of the mortgaged property to be made on the first Tuesday in March, 1906, as directed at the December term, 1905, should not be made, and directing that a sale be made on the first Tuesday in August, 1906, the sole ground of such order of postponement of sale was that receiver's net earnings might be made and accumulate applicable to payment of "E" class claims; plaintiff protested against and objected and excepted to the order postponing said sale.　At this February term, 1906, trial was had in the litigation known as the Harle case, resulting in a special verdict, upon which judgment was rendered adjudging Mrs. Julia C. Harle as against the railway company to be the owner of approximately 12 or 14 miles of the road, being the part from Marshall to Mountvale Springs.　An appeal has been taken from the judgment and is now pending.　Plaintiff was and is in no way the cause of or chargeable with this litigation with Mrs. Harle.　On May 18, 1906, in entering a vacation order in determining motion of certain creditors, other than plaintiff, to remove S. P. Jones as receiver, an announcement was made in said order that on August 1, 1906, at chambers in vacation at Longview, Texas, consideration would be had as to whether the sale of the mortgaged property should be postponed indefinitely in the interest of creditors.　The commissioner in due time proceeded to advertise and give notice of the sale of the mortgaged property to occur on August 7, 1906 (first Tuesday in August, 1906), and is intending to make said sale pursuant to the decree and orders of the court aforesaid.　The said judgment and decree of September 22, 1904, was on January 26, 1906, affirmed by the judgment of the Court of Civil Appeals of the Fifth Supreme Judicial District of Texas in cause therein No. 4958, Western Supply & Manufacturing Company, et al., plaintiffs in error, v. United States & Mexican Trust Company, et al., defendants in error, said plaintiff in error being intervenors herein, and the mandate of said court on such affirmance has been filed in this court, and said judgment and decree of September 22, 1904, is unredeemed and in full force and effect.　The applicants for this postponement of sale are holders of respective demands allowed and adjudicated herein as Class "E" (unsecured) demands, and the same are unpaid.　That since March 15, 1906, and prior to July 1, 1906, the receiver has made net earnings, as appears by his reports to the court from operation of the mortgaged property (the Texas Southern Raiload and appurtenances) in the approximate aggregate sum of $10,511.24, without, however, making any allowance or deduction therefrom for payment of the receiver for his services or for interest on his indebtedness or for extraordinary but necessary repairs or for the costs of the case; that of said earnings the sum of $7,999.05 has been paid over to the commissioner, P. M. Young, under the order of March 6, 1906, relative thereto, and that the receiver will probably continue to make net earnings from and by the operation of the road applicable in some extent to the applicant's demands and

not to payment of the bonds secured by the mortgage to plaintiff until applicant's demands are paid in full; that the defendant railway has no other property of material value than the mortgaged property (said railroad), and defendant is insolvent and was so at the time of commencement of this action, and that unless these applicants, being Class "E" creditors, receive payment in whole or in part from the receiver's earnings applicable thereto it is extremely improbable that they will receive any payment from the proceeds of the sale of the mortgaged property which will probably be insufficient to pay the mortgage debt (bonds) represented by plaintiff as trustee and liens of classes prior thereto. The total demands up to this time adjudicated into Class "E" amount approximately, exclusive of interest, to $91,500.

"In due time, more than thirty days prior to each of the respective sale dates specified in said decree and judgment of September 22, 1904, and renewal orders of sale made by the court, the clerk of the court, at request of plaintiff, issued orders of sale (writs under his hand and seal of court) directing the commissioner in accordance with such decree and orders of the court to proceed to make sale of the mortgaged property (except on the order directing sale to be made on first Tuesday in January, 1906, sale at which date was by informal vacation direction of the judge of court, made before writ was issued, ordered not to be made) and the commissioner at the respective times the foregoing orders were made directing such sales not to be made was proceeding in due course to advertise and give notice of sale and carry out such decree and renewal orders of sale. The receiver, who was appointed on July 11, 1904, was suggested by the plaintiffs, and Class "E" creditors were not consulted. The plaintiff at the August term, 1904, resisted an application for an early sale. And on the sale day in December, 1904, declined to bid, though a committee representing the bondholders had arranged to purchase and qualify to bid, and then declined to bid."

The appellant's contention is that the action of the court in postponing the sale of the property under the judgment of foreclosure was void, as the court was without jurisdiction to make such order of postponement, the term of court at which the order of sale was made having ended and the court's jurisdiction over the said order of sale ended with the adjournment of said term.

When the appellant brought its suit for foreclosure and prayer for the appointment of a receiver on account of insolvency, and said receiver was appointed, the court thereby took possession of the property and it was the court's duty to administer said property for the best interests of all concerned, according to the rules of law and equity. Rev. Stats., art. 1491, provides, "No corporation shall be administered in any court for a longer period than three years from the date of such appointment; and within three years such court shall wind up the affairs of such corporation, unless prevented by appeal or litigation." From the institution of the foreclosure suit until the order postponing the order of sale three years had not elapsed. Nor has it yet expired, and this court will not interfere

with the lower court's action in administering the property, unless there is an abuse of discretion in so doing. It is the duty of the court to protect and preserve all liens, but the right to enforce such liens may be suspended pending the receivership. Smith on Receivership, sec. 7.

In this case the court had the right to suspend the enforcement of the lien for proper administration of the property until the final close of the receivership.

Ordinarily, courts lose jurisdiction of a case finally disposed of when the term of court adjourns. But in the case at bar the receivership had not been wound up, and the court still retained jurisdiction of the case. It is true, appellant's lien had been established and a judgment of foreclosure had, but the court still retained the right to suspend the enforcement thereof, if circumstances demanded. The court never lost control over the order of sale. The order required the property to be sold for not less than $500,000. The property was offered for sale but no bid was made, consequently no sale. Had a sale been made it would have been necessary that it be confirmed by the court before it would have become effective. The rule governing the enforcement of final judgments has no application in this instance. The title to part of the property was in litigation, which of necessity depreciated the value of the Southern Railway Company's interest at that time, and had it been sold then would have lessened the amount of the bid, and we think the court was justified in postponing the sale until the Harle litigation was settled.

Under the circumstances the District Court did not err in refusing the mandamus, and the judgment is affirmed.

*Affirmed.*

Writ of error refused.